UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| BLANCA RODRIGUEZ,<br>    Plaintiff, | § § § | |
| V. | § § | CASE NO. 2:14-CV-69<br>JURY DEMANDED |
| FORT DUNCAN MEDICAL CENTER,<br>LP d/b/a FORT DUNCAN REGIONAL<br>MEDICAL CENTER and<br>UNITED STATES OF AMERICA,<br>    Defendants. | § § § § § | |

<u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff, BLANCA RODRIGUEZ, brings this action against Defendants and for cause of action would show the following:

<u>1. PARTIES</u>

1.1    Plaintiff is an individual residing in Maverick County, Texas.  Blanca Rodriguez is the patient who was injured by Defendants' negligence.

1.2    Defendant, Fort Duncan Medical Center, LP d/b/a Fort Duncan Regional Medical Center ("FDRMC"), can be served by serving citation upon its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

1.3    Defendant is the United States of America, and each of the relevant acts complained of were performed by David Land, D.O.  Service of process may be had upon Defendant United States of America by service of Summons and Complaint upon the United States Attorney for the Western District of Texas, Robert Pitman, 601 N.W. Loop 410, Suite 600, San Antonio, Texas 78216.

## 2. JURISDICTION & VENUE

2.1    Jurisdiction in this case is founded upon the Federal Torts Claim Act, 28 U.S.C. §1346(b), 2671, *et seq.*

2.2    At all times relevant to Plaintiff's allegations of negligence, Dr. Land was a Public Health Service employee acting within the course and scope of his employment with UMC, a federally supported Public Health Service entity, under 42 U.S.C. §233.

2.3    Plaintiff submitted Completed Standard Form 95 with the U.S. Department of Health & Human Services. Plaintiff's claim has either been formally denied or six months have expired since the date the claims were submitted.

2.4    Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this district, pursuant to 28 U.S.C. §1391(e)(1)(B).

2.5    Plaintiff has fully complied with the requirement of Texas Civil Practice & Remedies Code §74.051 and §74.052 by providing statutory notice to the health care providers against whom this lawsuit is filed.

## 3. FACTUAL ALLEGATIONS

3.1    Ms. Rodriguez presented to Dr. Land's office for her first prenatal consultation at 8 weeks from her last menstrual period on February 5, 2013 with an estimated date of delivery of September 16, 2013 (coincidentally Ms. Rodriguez' birthday). This was her fifth pregnancy with a history of one miscarriage and three vaginal deliveries at term with an average weight of the newborns of approximately 6 lbs. 8 oz. These apparently were normal pregnancies with no risk factors.

3.2    Ms. Rodriguez' prenatal care was unremarkable until July 10, 2014 (30 weeks and 1 day of gestation) when a 1 hour Glucose Challenge Test was ordered and reported elevated at 149

mg/dl. As a note, this screening test should be performed ideally between 26 and 28 weeks in order to timely identify patients at risk of Gestational Diabetes. It was not until two weeks later when the diagnostic 3 hour Glucose Tolerance Test was ordered and was reported with 2 out of 4 abnormal values which clearly established that in this pregnancy Ms. Rodriguez had Gestational Diabetes and thus putting her fetus at a higher risk of prenatal complications and death.

3.3     Ms. Rodriguez was simply started by Dr. Land on a 2200 calorie diet and the testing for the rest of the pregnancy was suboptimal at best.

3.4     During her admission to Fort Duncan Medical Center Ms. Rodriguez underwent a very long induction with a clearly protracted labor pattern due in all probability to the larger size of this baby (8 lb. 3 oz.) when compared to her previous newborns. Dr. Land and the Nursing Personnel at Fort Duncan Medical Center clearly neglected to recognize in a timely manner this inadequate progression of the labor.

3.5     Further in this long labor process, the baby started showing intermittent signs of distress with attempts of recovering. These signs of distress became more ominous until it was clear that there was obvious damage to the fetal nervous system due to lack of oxygenation. Dr. Land and the Nursing Staff at Fort Duncan Medical Center failed to timely recognize these signs of fetal distress allowing the irreversible deterioration of the baby's condition. The standard of care requires that they recognize the signs of fetal distress timely prior to any irreversible determination of the fetus' condition and damage to the fetal nervous system due to lack of oxygenation.

3.6     The Labor monitoring continued with multiple unrecognized signs of fetal distress and the baby started showing ominous signs of severe damage with repetitive late decelerations.

3.7     The baby was not delivered until 8:45 p.m. Further, nowhere in the nursing or doctor's notations was it documented that the baby was in distress and that a Cesarean Section had to ultimately be done for failure of the labor to progress.

3.8     When a Cesarean Section was finally decided upon, it was not as a STAT Cesarean Section.  The preoperative indications were "Failure to progress and Cephalopelvic disproportion," which lead to a significant delay between the calling of the Cesarean Section and the actual delivery of the baby.  During this time delay of over 23 minutes there was no adequate monitoring of the baby's heart.

3.9     Dr. Land and the Nursing Personnel at the Fort Duncan Regional Medical Center allowed inappropriate monitoring of the baby by failing to recognize the worsening fetal heart tracing as a severe fetal distress and neglecting to call for a STAT Cesarean Section.  Had Dr. Land performed a Cesarean Section several hours sooner, this baby would in all medical probability have been delivered alive.

3.10    The standard of care requires in this situation for a STAT Cesarean Section upon timely recognition of signs of fetal distress.

3.11    Additionally, Ms. Rodriguez's uterus ran out of Pitocin receptors after a very long and protracted labor under Pitocin stimulation in a clearly obstructed delivery resulting in inadequate uterine contractions.  This most likely caused the post-delivery hemorrhage which forced Dr. Land to perform a supracervical hysterectomy.  This hemorrhage and resulting supracervical hysterectomy could also likely have been avoided if Ms. Rodriguez had undergone a shorter labor and a much earlier Cesarean Section.

## 4. CAUSES OF ACTION

4.1     Plaintiff alleges that FDRMC, acting through its directors, officers, administrators, nurses, nurse assistants, employees, agents and servants, violated the duty of care it owed to Plaintiff to exercise that degree of care, skill, supervision, and diligence ordinarily possessed and used by other health care providers under the same or similar circumstances.  More specifically, Plaintiff alleges that FDRMC, acting through its directors, officers, administrators, nurses, nurse assistants, employees, agents and servants, was negligent in failing to provide adequate care and failing to effectively communicate with the patient's physician.

4.2     FDRMC's acts and omissions, singularly and/or collectively, proximately caused and resulted in the injuries suffered by Plaintiff.

4.3     Plaintiff alleges that USA, acting through its physicians, employees, agents, and servants, violated the duty of care it owed to Plaintiff to exercise that degree of care, skill, supervision, and diligence ordinarily possessed and used by other health care providers under the same or similar circumstances.  More specifically, Plaintiff alleges that Dr. Land was negligent in failing to provide adequate obstetrical care and failing to effectively communicate with the patient's nurses.

4.4     USA's acts and omissions, singularly and/or collectively, proximately caused and resulted in the injuries suffered by Plaintiff.

## 5. DAMAGES

5.1     Plaintiff incorporates by reference the allegations contained within paragraphs 1.1 through 4.4

5.2     As a direct and proximate result of the negligence of Defendants, Plaintiff has suffered severe and permanent injuries and damages, including the following:

    a.    Past and future pain, suffering and mental anguish;

    b.    Past and future physical impairment and disfigurement; and

    c.    Past medical expenses.

## 6. JURY DEMAND

6.1    Plaintiff demands a trial by jury with respect to her claims against FDRMC and has tendered payment of the jury fee.

## 7. PRAYER

7.1    PREMISES CONSIDERED, Plaintiff prays that this Court:

    a.    Award Plaintiff general damages in such an amount as shall be fully shown at trial;

    b.    Award Plaintiff special damages in such an amount as shall be fully shown at trial;

    c.    Award Plaintiff court costs and expenses;

    d.    Award Plaintiff pre- and post-judgment interest at the maximum rate permitted by law; and

    e.    Award such further relief, both special and general, legal and equitable, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

FELIX GONZALEZ LAW FIRM, P.C.
711 Navarro Street, Suite 104
San Antonio, Texas 78205
(210) 298-6666 – Telephone
(210) 298-6000 – Facsimile
felix@felixgonzalezlaw.com

By: *[signature]*
FELIX GONZALEZ
State Bar No. 00793829

AND

LAW OFFICE OF CRAIG L. WHITE
111 West Olmos Drive
San Antonio, TX 78212
(210) 930-7700 - Telephone
(210) 930-9353 – Facsimile
craigwhite@111westolmos.com

By: *Craig White by [signature]*
CRAIG L. WHITE
State Bar No. 21292400

ATTORNEYS FOR PLAINTIFF